IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

MOYATA ANOTTA, an individual; and
NW METALS, INC., an Oregon corporation,

    Plaintiff,

v.

OREGON DEPARTMENT OF
ENVIRONMENTAL QUALITY, an Oregon
governmental regulatory agency;
RICHARD WHITMAN, an individual;
LEAH FELDMAN, an individual;
NINA DECONCINI, an individual;
DERICK SANDOZ, an individual;
COURTNEY BROWN, an individual; and
STEVEN DIETRICH, an individual,

    Defendants.

Case No.

**COMPLAINT**
**(42 U.S.C. § 1983 Violation of 14th Amendment Right to Procedural Due Process; 42 U.S.C. § 1983 Violation of 14th Amendment Right to Equal Protection; 42 U.S.C. § 2000d Civil Rights Act Title VI; Intentional Infliction of Emotional Distress)**

**NOT SUBJECT TO MANDATORY ARBITRATION**

Prayer: $18,350,000.00; Injunctive Relief
Filing Fee: $1,178
Fee authority: ORS 21.160(1)(e)

## I. PARTIES, JURISDICTION AND VENUE

1.

Plaintiff MOYATA ANOTTA ("Anotta") is a black male and an Ethiopian national who immigrated to the United States about two decades ago. At all material times, he is and was a resident of Oregon, and a corporate officer of NW Metals Inc. At all material times, Plaintiff NW METALS INC. ("NW Metals") is and has been an Oregon corporation. At all material times, NW Metals is and was a black owned business operating in the City of Portland, Oregon. At all material times, NW Metals helps and helped relieve Portland residents from unsafe and hazardous materials

EXHIBIT 1
Page 2 of 12

1 by recycling automobiles and helps and helped tow companies recycle motorhomes that are
2 abandoned within the City and its surrounding area.

3 2.

4 Defendant OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY ("DEQ") is a
5 government agency duly authorized by the State of Oregon. At all material times, Defendant DEQ
6 was and is a state agency operating under Oregon law.

7 3.

8 At all material times, Defendant RICHARD WHITMAN ("Whitman") was and is
9 employed as the Director of DEQ. He is sued in his individual capacity.

10 4.

11 At all material times, Defendant LEAH FELDON ("Feldon") was and is employed as the
12 Deputy Director of DEQ. She is sued in her individual capacity.

13 5.

14 At all material times, Defendant NINA DECONCINI ("Deconcini") was and is the
15 employed as the NW Region Administrator of DEQ. She is sued in her individual capacity.

16 6.

17 At all material times, Defendant DERICK SANDOZ ("Sandoz") was and is an employee
18 of DEQ. He is sued in his individual capacity.

19 7.

20 At all material times, Defendant COURTNEY BROWN ("Brown") was and is employed
21 by DEQ. She is sued in her individual capacity.

22 8.

23 At all material times, Defendant STEVEN DIETRICH ("Dietrich") was and is employed
24 by DEQ. He is sued in his individual capacity.
25 / / /
26 / / /

EXHIBIT 1
Page 3 of 12

9.

The above individual Defendants each acted at all material times on their own behalf individually and also individually and collectively on DEQ's behalf and under the color of state law as described in the paragraphs following. Each had the authority to themselves refrain, and cause DEQ to refrain, from the subject conduct that caused damages to Plaintiffs.

10.

This Court has subject matter jurisdiction over Plaintiffs' claims.

## II. FACTUAL ALLEGATIONS

11.

Plaintiffs incorporate the allegations in all preceding paragraphs as if fully set forth herein.

12.

The racially discriminatory conduct of the Defendants described below violated the rights and privileges afforded to Anotta and NW Metals under the United States Constitution, including the right to due process and equal protection guaranteed by the Fourteenth Amendment, as well as rights and privileges guaranteed by state common law. Defendants' actions individually and collectively led to NW Metals ceasing operation of its shredder for an extended period, resulting in significant economic harm to NW Metals and significant emotional distress to Anotta.

13.

NW Metals has operated as a business and maintained an outstanding regulatory record. The staff at NW Metals are ethnically diverse and predominantly individuals with criminal backgrounds that were given a second chance in life by employment at NW Metals.

14.

NW Metals has at various times maintained 15 to 20 salaried employees and approximately 50 independent contractors. At all material times, NW Metals' annual payroll was approximately half a million dollars.

///

EXHIBIT 1
Page 4 of 12

15.

In or about March 2018, NW Metals installed a state of the art, environmentally friendly, EPA certified metal shredder. On information and belief, it was the first black-owned facility in the United States to do so.

16.

Shortly thereafter, on March 24, 2018, DEQ issued a cleanup order to NW Metals that failed to follow the rule of law, and only gave NW Metals to seven (7) days to comply. Amongst other improprieties, there was no spill, and the order was issued by DEQ personnel who had not been at NW Metals' premises. NW Metals complied, to its immediate financial detriment in an amount of not less than $300,000.00, even though DEQ and its agents had previously determined no action was necessary.

17.

On June 20, 2018, DEQ issued NW Metals a Type 2 Notice of Intent to Construct permit, a form of an Air Contaminant Discharge Permit ("ACDP"). NW Metals requested, for due process and other legitimate reasons, that DEQ conduct a proper determination based on proper classification and use of the data from NW Metals on its state of the art shredder, instead of using data from outdated shredding machines that were manufactured in the last century and which operated materially different in several respects.

18.

NW Metals did not have a shredder on its facility premises at the time, because it had been destroyed in a fire since its installation in March 2018.

19.

In or about November 2018, NW Metals ordered a new shredder, an Arjes 950 type 4 final, which such shredder arrived at its facility in December 2018. NW Metals notified DEQ of this.

/ / /

/ / /

EXHIBIT 1
Page 5 of 12

20.

In or about January and February 2019, DEQ improperly ordered and sought to force NW Metals to apply for a Simple ACDP without a proper determination if in fact a permit was required, including on the threat of DEQ seeking injunctive relief if NW Metals did not do so. Of note, this was a different permit requirement than the June 2018 permit, including a $7,000 a year difference in annual filing fee.

21.

In or about March 2020, including by and through the actions, decisions, and participation of Brown and Dietrich, DEQ sought injunctive relief against NW Metals, including by filing suit in this Court against NW Metals, so as to force NW Metals to cease operation of the shredder unless and until DEQ issued a Simple ACDP, even though, as NW Metals ultimately learned, this was not required in fact or under applicable law.

22.

DEQ, including by and through the actions, decisions, and participation of Brown and Dietrich, withheld critical information from this Court during the injunction hearing and related proceedings, including that DEQ delayed processing NW Metals' completed ACDP application.

23.

Three other shredding facilities in the State of Oregon, that are white-owned, were allowed to operate their shredders without any permit, including the ACDP permit that DEQ sought to force NW Metals to apply for.

24.

Based upon DEQ's filing and representations under penalty of perjury, the Court imposed a temporary restraining order on only NW Metals' shredder while allowing similarly situated white-owned facilities that would, under DEQ's rationale, likewise be non-compliant to continue operating without a Simple ACDP permit.

///

EXHIBIT 1
Page 6 of 12

25.

NW Metals, as a business, is and was at all material times compliant with all applicable DEQ rules, regulations, and requirements.

26.

In or about May 2020, Sandoz, along with fellow DEQ inspector David Palais, visited NW Metals' facility. Based on that visit, Sandoz falsely accused Plaintiffs of failing to comply with the Court's temporary restraining order in place. During their site visit at NW Metals, Sandoz and Palais both acknowledged there was no present threat to the environment and public safety at the NW Metals facility during the time of inspection.

27.

In or about June 2020, NW Metals made formal, written requests to Whitman, Feldon, and Deconcini that they and DEQ allow NW Metals to operate its shredder in accordance with applicable law. NW Metals specifically asked that DEQ treat NW Metals, a black-owned business, the same way it treats similarly situated white-owned businesses. NW Metals' requests, however, were denied.

28.

As a result, NW Metals was unable to operate its Arjes 950 type 4 final shredder.

29.

Schnitzer Steel, a white-owned business located in the City of Portland, Oregon, is and has been operating a metal shredder since the early 1970's. DEQ did not require Schnitzer Steel to apply for a Simple ACDP permit until after the events described above, despite Defendants having had knowledge that Schnitzer Steel was operating its metal shredder for many years before then without a Simple ACDP permit.

30.

Rivergate Scrap Metals, another white-owned business located in the City of Portland, Oregon, is and has been operating a metal shredder since the early the 1990's. DEQ did not require

EXHIBIT 1
Page 7 of 12

1  Rivergate Scrap Metals to apply for a Simple ACDP permit until after the events described above,
2  despite Defendants having had knowledge that Rivergate Scrap Metals was operating its metal
3  shredder for many years before then without a Simple ACDP permit.

31.

Pacific Recycling, another white-owned business located in the City of Eugene, Oregon, is and has been operating a metal shredder since 2015. DEQ did not require Pacific Recycling to apply for a Simple ACDP permit until after the events described above, despite Defendants having had knowledge that Pacific Recycling was operating its metal shredder for many years before then without a Simple ACDP permit.

32.

Defendants had knowledge that only NW Metals, a black-owned facility, was forced to cease operating its shredder because of Defendants' above-described actions. In the meantime, Defendants allowed the white-owned facilities identified above to operate their shredders without interruption, and without current and up-to-date permits.

### III.    FIRST CAUSE OF ACTION

**Plaintiffs Against All Defendants**

**(42 U.S.C § 1983 Violation of 14th Amendment Right to Procedural Due Process)**

33.

Plaintiffs incorporate the allegations in all preceding paragraphs as if fully set forth herein.

34.

Defendants deprived Plaintiffs of their constitutional right to due process, including under the 14th Amendment of the U.S. Constitution, when they exercised power by virtue of state law and policy which was made possible only because they were clothed with the authority of the DEQ.

/ / /

/ / /

EXHIBIT 1
Page 8 of 12

35.

NW Metals has a right to operate its business without improper enforcement of state policies by racially motivated state agents. Defendants violated Plaintiffs' right to due process as indicated in the facts above.

36.

Defendants' conduct was done under the color of the law. Defendants acted in their capacity as DEQ agents and were therefore clothed with the authority of the state when they violated Plaintiffs' right to due process.

37.

Defendants' conduct effectively shut down Plaintiffs' capacity to function in its intended business and impeded Plaintiffs' ability to service customers and ultimately generate profits.

38.

As a result of Defendants' actions, Plaintiffs sustained $18,350,000 in damages for which Defendants are liable, including because such actions ultimately caused NW Metals to cease operating its shredder for a period of not less than one year.

IV.   SECOND CAUSE OF ACTION

**Plaintiffs Against All Defendants**

**(42 U.S.C § 1983 Violation of 14th Amendment Right to Equal Protection)**

39.

Plaintiffs incorporate the allegations in all preceding paragraphs as if fully set forth herein.

40.

Defendants intentionally applied DEQ policy in a discriminatory matter against NW Metals because of Anotta's race and nationality, which resulted in both financial and emotional damages as well as damage to Plaintiffs' standing and reputation in the community, in violation of their constitutional right to equal protection, including under the 14th Amendment of the U.S. Constitution.

EXHIBIT 1
Page 9 of 12

41.

Defendants required NW Metals to obtain an unnecessary permit to operate its shredder that posed no threat to the public and was compliant with all applicable DEQ rules, regulations, and requirements. Defendants' demands on NW Metals were irrational and wholly arbitrary, motivated by spiteful, racially discriminatory efforts to punish Plaintiffs for reasons unrelated to any legitimate state objective.

42.

As demonstrated by the above facts, Defendants did not impose similar requirements on any other similarly situated businesses, all of which are owned by white individuals, and instead intentionally treated NW Metals differently because it is a black-owned business.

43.

As a result of Defendants' actions, Plaintiffs sustained $18,350,000 in damages for which Defendants are liable, including because such actions ultimately caused NW Metals to cease operating its shredder for a period of not less than one year.

V.  THIRD CAUSE OF ACTION

Plaintiffs Against Defendant DEQ Only

(42 U.S.C § 2000d Civil Rights Act Title VI)

44.

Plaintiffs incorporate the allegations in all preceding paragraphs as if fully set forth herein.

45.

Defendant DEQ receives federal government funding.

46.

Defendant DEQ intentionally discriminated against Plaintiffs, including in the manner described above.

/ / /

/ / /

EXHIBIT 1
Page 10 of 12

47.

Defendant DEQ was motivated by an intent to discriminate against NW Metals based on and because of Anotta's race and national origin.

48.

As a result of Defendant DEQ's actions, Plaintiffs sustained $18,350,000 in damages for which Defendant DEQ is liable, including because such actions ultimately caused NW Metals to cease operating its shredder for a period of not less than one year.

## VI.  FOURTH CAUSE OF ACTION

**Plaintiff Anotta Against All Defendants**

**(Oregon Common Law-Intentional Infliction of Emotion Distress)**

49.

Plaintiffs incorporate the allegations in all preceding paragraphs as if fully set forth herein.

50.

Defendants' discriminatory conduct toward Anotta was intentional, outrageous, and outside the bounds of socially tolerable conduct. Defendants had authority over Anotta and intentionally abused that power to effectively shut down Anotta's livelihood and destroy his good reputation and standing in the community as a business owner and operator. As a minority, Anotta is more susceptible to emotional distress caused by racial discrimination. Defendants knew the damage they inflicted on Anotta would exceed mere financial damages and exude to Anotta's personal life and emotional health, which such damage did.

51.

As a result of Defendants' actions, Anotta sustained not less than $18,350,000 in damages for which all individuals Defendants are liable.

/ / /

/ / /

/ / /

EXHIBIT 1
Page 11 of 12

## VII. RESERVATION

52.

Plaintiffs reserve the right to conduct discovery into alternative claims and additional defendants and to amend these claims as necessary.

## VIII. JURY TRIAL REQUESTED

53.

Plaintiffs hereby respectfully request a jury trial for all claims stated herein.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request entry of judgment in their including an award of money damages against Defendants, as follows:

1. Damages in an amount determined by the jury, but not less than $18,350,000.

2. Upon motion, and with leave of the Court, punitive damages in an amount determined by a jury to be sufficient to deter Defendants and others from like conduct;

3. Pre-judgment and post-judgment interest at the statutory amount of 9% per annum;

4. Plaintiffs' reasonable attorneys' fees, expert fees, litigation expenses, and court costs incurred in relation to this matter, as allowed under applicable law;

5. For the injunctive and declaratory relief in favor of Plaintiff that the Court deems just including but not limited to: (1) a declaration that all Defendants violated Plaintiff's legally protected rights under the 14th Amendment of the U.S. Constitution and 42 U.S.C § 2000d Civil Rights Act, (2) a permanent injunction enjoining all Defendants from engaging in any practice which racially discriminates against Plaintiffs and all similarly situated minority owned businesses and their owners in violation of the 14th Amendment of the U.S. Constitution and 42 U.S.C § 2000d Civil Rights Act; (3) order all Defendants to create, implement, and carry out such policies, practices, and programs for providing equal treatment of similarly situated businesses and their owners which affirmatively eradicate the effects of past and present unlawful practices; and

/ / /

EXHIBIT 1
Page 12 of 12

1     6.    Such other relief as the Court deems appropriate.

2     Dated: June 3, 2022.

*/s/ Roscoe C. Nelson, Jr.*
Roscoe C. Nelson, Jr.
OSB# 732218
NELSON & NELSON

Submitted by:
Roscoe C. Nelson, Jr., OSB #732218
Attorney for Plaintiffs
NELSON & NELSON
811 SW Naito Parkway, Suite 200
Portland, OR 97204
Telephone: (503) 222-1081
E-mail: attorneys@roscoecnelson.com