**Roscoe C. Nelson, Jr., OSB No. 732218**
Email: attorneys@roscoenelson.com
Nelson & Nelson
811 SW Naito Parkway, Suite 200
Portland, Oregon 97204
Telephone:    503.222.1081


        Of Attorney for NW Metals Inc



**Moyata Anotta**
Email: anottam@gmail.com
3744 NW Devoto Ln
Portland, Oregon 97229
Telephone:    503.367.6955


        Plaintiff Pro Se




Ellen F. Rosenblum
Attorney General
**James S. Smith, OSB No. 840932**
Email: james.s.smith@doj.state.or.us
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone:    971.673.1880


        Of Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| MOYATA ANOTTA, an individual; and NW METALS, INC., an Oregon corporation, | ) ) ) | Case No. 3:22-cv-00953-YY |
| Plaintiffs, | ) ) | **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| v. | ) ) | |
| OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY, an Oregon governmental regulatory agency; RICHARD WHITMAN, an individual; LEAH FELDON, an individual; NINA DECONCINI, an individual; DEREK SANDOZ, an individual; COURTNEY BROWN, an individual; and STEVEN DIETRICH, an individual, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION

# FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I. INTRODUCTION ............................................... 7

II. FACTS AND PROCEDURAL HISTORY ....................................... 8

III.STATEMENT OF QUESTIONS INVOLVED AND UNDISPUTED FACTS…………………………………..................................... 8

IV. ARGUMENT ................................................... 13

    A. Summary Judgment Standard…………….................................13

    B. Spoliation Of Evidence, Perjury, and Wilful Denial to Answer Questions Under Oath …………………………….. ……………………………14

        1. Spoliation of Evidence…………………….………………….. 14

        2. Spoliation Inference ………………………………………….17

        3. Punishment for a Wrongful Act and Remediation………………21

        4. Perjury……………………………………………….………24

        5. Wilful Denial to Answer Questions Under Oath……………….25

    C. The Individual Defendants Violated Plaintiffs' Right Under The Fourteenth Amendment . ……………………..…………………..………26

    D. Defendants Conspired to Violate The Plaintiffs' Right Under 42 U.S.C. 1983 ………………………………….…….…………………………26

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

E. Undisputed Facts Establish The Deprivation of a Right Secured by The Constitution ……………………………………..…………….……….26

    a. The Unlawful Forced Shutdown of The Shredder and Denial To apply the Law and Rules Violated The 14th Amendment Right Procedural Due Process.………………………………..…………….….. 27

    b. The Deprivation Of The Shredder Operation by NW Metals Constitutes "STATE ACTION".......................................................... 29

      1. Overview Of Key U.S Supreme Court Decisions……………29

F. The Deprivation of Plaintiffs Ability to Operate its Shredder as Well as Unfair Treatment Created an Unequal Protection…………………..…….. 29

V. CONCLUSION AND REQUEST FOR RELIEF .............................................32

## EXHIBITS

Exhibit                                                                     Page

1 Type II Intent to Construct Permit…………………………………...…..9,11

2 General Air Pollution Procedure and Definition…………………………7

3 Flow Chart ……………………………………………….…………….…..24

4 Exhibits for David Graiver Deposition 3/15/24…..…………….…………….N/A

5 David Graiver Deposition Transcript………………………..9,14,15, 24,25,30

6 Stationary Source Notification Requirements……………………..………11,27

7 Schnitzers Steels ACDP Application…………………………………..…….31

8 Rivergate Scrap Metals ACDP Application…………………..…………..31

9 Capital Grinding ACDP……………………………………………..…………31

10 Court of Appeals Decision……………………………………………10,28

11 Declaration of David Graiver……………………………..……………..12,24

17 Exhibits for Steven Dietrich Deposition 3/15/24.…………….………...……N/A

18 Richard Whitman Letter…………………………………………..…………..12

19 Robert Mitchell Declaration……………………………………..…………..12

25 Ali Mirzakhalili Deposition Transcript…….……………………11,24,28,30

26 Steven Dietrich Deposition Transcript………………………..…………….25

27 Email……………………………………………………...……….…..28

28 Mike Greenberg Deposition Transcript……………………..……………..12

29 Exhibits for Michael Greenburg Deposition 5/2/24…………….…..……..N/A

30 St. Johns residents Petition………………………………..…………...12,32

31 Email………………………………………………………….……15

32 Exhibits for Elizabeth Everman Deposition 4/10/24………..…………..N/A

33 Elizabeth Everman Deposition Transcript…………………………15,24

34 Request for File 11091 ………………………………..……………………15

36 State Response…………….…………………………………………………..15

37 Email…………………….…………………………………………………..15

38 Nina Deconcini Deposition Transcript..……………………..………………15,16,28

39 Exhibits for Nina Deconcini Deposition 5/2/24……………………..………..N/A

42 State Defendants Response………………………….……………………….24

44 Caitlin Lewis Memorandum………………………………………..…………15

47 Email ………………………………………………..………..……………..11

50 Declaration of Heather Kuoppamaki………………………………………11,30

51 Clean Air Oregon Definition…………………………………………………28

52 ACDP Record Retention Schedule……………………………………………15

53 Director Record Retention Schedule………………………………………..16

54 Richard Whitman Deposition Transcript..……………………….……………16

55 David Graiver Declaration………………………………..………………10,25,27

56 Courtney Brown Affidavit……………………..…………………………10,25,27

57 Exhibits for Richard Whitman Deposition 5/3/24…………………..…………N/A

58 Order Dissolving Injunction…………………………………………………..27

59 Email…………………………………………………………..…………24

60 Email……………………………………………………………………..28

61 Email…………………………………………………………………..28

62 NW Metals Civil Penalty…………………………………….…………………31

63 NW Metals Notice of Move to New Location…………………..……………..28

64 Rivergate Scrap metal Civil Penalty…………………………………………..12,31

65 Email ……………………………………………………………….12

66 Going Home Support Letter…………………….….……………….12

67 NW Metals Employee Email…………………….……………………. 32

68 Trevor Largent Déclaration………………...……………..………………32

69 Anotta Declaration…………………………………………………….33

## I. INTRODUCTION

From the start of this litigation, there has been little dispute over the facts of the case. Plaintiffs and the Defendants, OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY, an Oregon governmental regulatory agency; RICHARD WHITMAN, an individual; LEAH FELDON, an individual; NINA DECONCINI, an individual; DEREK SANDOZ, an individual; COURTNEY BROWN, an individual; and STEVEN DIETRICH, an individual, agree that on or about June 20, 2020, DEQ issued a Type II notice of intent to construct Permit, an Air contaminant Discharge permit(ACDP) as defined under OAR 340-200-0020 (110), general air quality definitions. (see exhibit 2 page 2)

Between March 3rd, 2020 through March 25, 2021. NW Metals was the only metal shredding facility in the State Of Oregon that the defendants forced the plaintiff to cease operation of its metal shredder until a Simple ACDP was issued.

Since March 25, 2021, NW Metals is the only metal shredding facility that is operating under a Simple ACDP. Defendants have always alleged that "No One" can operate a metal shredder without an ACDP yet they are to this day allowing

Shnitzers steel and Rivergate Scrap metal both white owned facilities to operate their metal shredders without the permit they allege is required to operate a metal shredder.

Since March 25, 2021, NW Metals Incs' shredder is the only metal shredder that is limited to 6.75 hours of operation a day in the State of Oregon. All other metal shredding facilities in the State Of Oregon have no hour limitation on operations of their shredders.

Although the parties largely agree on the facts, they differ widely on the applicable law. Plaintiffs claim that the forced stoppage of its metal shredder operation and unequal treatment within the State Of Oregon violates the Fourteenth Amendment.

Meanwhile, the Defendants' dispute the Plaintiffs' claims of the violations under 42 U.S.C. § 1983 violation of its 14th Amendments Right to Procedural due process; 42 U.S.C. § 1983 violation of its 14th Amendments Right to Equal Protection, U.S.C 2000d Civil Rights Act Title VI Intentional Infliction of Emotional Distress. Accordingly, Plaintiffs' respectfully requests that the Court enter judgment in its favor.

## II. FACTS AND PROCEDURAL HISTORY

The Plaintiffs, relies on the facts as detailed in the accompanying Statement of Undisputed Material Facts (the "Facts"). The procedural history of this case is as follows:

Plaintiffs filed a Complaint on June 3rd, 2022, alleging that the Defendants

violated its Fourteenth Amendments Right to Procedural due process, its Fourteenth Amendments Right to Equal Protection, and U.S.C 2000d Civil Rights Act Title VI Intentional Infliction of Emotional Distress.

Defendant timely filed an Answer to the Complaint on July 07, 2022.[see Doc 5]. The Parties then engaged in discovery, exchanging documents and conducting depositions of key witnesses. Discovery in this matter closed on May 21st 2024. [see Doc. 25]. The Plaintiff now submits the accompanying Motion for Summary Judgment.

## III. STATEMENT OF QUESTIONS INVOLVED AND UNDISPUTED FACTS:

1. On or about March 3rd, 2020 did NW Metals have an Air Contaminant Discharge Permit (ACDP)? Suggested answer: Yes.

**UNDISPUTED FACT**: DEQ issued a Type II Intent to Construct Permit an Air Contaminant Discharge Permit as defined by Oregon Administrative Rule (OAR-340-200-0020(110). see exhibit 1 page 2, item #4.

2. Did DEQ hold a contested hearing to revoke or modify NW Metals Type II intent to construct ACDP? Suggested answer. No

**UNDISPUTED FACT**: Mr. Graiver testified that a contested hearing was not held to revoke NW Metals Type II intent to construct ACDP. see exhibit 5 page 22 lines 1-4

3. Does DEQ have authority to revoke or modify a permit without a contested hearing while a facility has not violated the conditions of its permit?.

Suggested answer. No

**UNDISPUTED FACT:** See Oregon Revised Statute(ORS) 468.070(5)

3. Does DEQ have a Rulemaking Authority?  Suggested answer. No

**UNDISPUTED FACT**: Court of Appeals has ruled that DEQ does not have rulemaking authority. see exhibit 10. The Environmental Quality Commission is the only body that has rulemaking authority.


4. Did Defendants provide false testimony, affidavit and declaration at the injunction hearing through Multnomah Circuit Court on Feb 24th, 2020 to force stoppage of shredder operation? Suggested answer: Yes.

**UNDISPUTED FACT**: Defendant, Courtney Brown and DEQ representative David Graiver submitted an affidavit and declarations respectively alleging NW Metals was operating without an ACDP when in fact they knew NW Metals was operating under a Type II intent to construct ACDP. Defendant Steven Ditrich provided a false testimony under oath that NW Metals was operating without an ACDP while he knew NW Metals had a Type II intent to construct ACDP.  exhibit 55, exhibit 56

5. Did Defendants know NW Metals Inc had an (ACDP) on or about  Feb 24th, 2020? Suggested answer: .  Yes

**UNDISPUTED FACTS**: Defendants knew NW Metals had an ACDP as it was issued by agency and it was discussed in several of their communications

4. Is NW Metals, a facility permitted under a Type II intent to construct

ACDP required to obtain a Simple ACDP under Oregon Administrative Rule (OAR) 340-216? Suggested answer: No.

**UNDISPUTED FACT**:  A Type II intent to construct permit  is a Type 2 change see Exhibit 1 page 3 "under Evaluations."

A facility operating under Type 2 changes is not required to obtain a permit under OAR chapter 340- division 216. see exhibit 6 page 2.


5. Is a Simple ACDP DEQ forced NW Metals to obtain regulated under OAR 340-216? Suggested answer: Yes

**UNDISPUTED FACT:** Simple ACDP is a permit regulated under OAR 340-216. NW Metals is not required to operate under a Simple ACDP by rule. Defendants are forcing NW Metals to operate under a permit that is not required by rule under threat of legal action if NW Metals does not comply with their orders.


6. Did Defendant's action create an unlevel and unfair playing ground by limiting NW Metals hour of operation to 6.75 hrs a day yet allowing the other white owned facilities to operate without hour limitation? suggested answer: yes

**UNDISPUTED FACT**:  See exhibit 25,  page 39 lines 8 - 22, exhibit  50 page 9(Unfair Advantage).


7. Did defendants have knowledge about their action created an uneven playing field in the industry: suggested answer: yes

**UNDISPUTED FACT**: see exhibit 47

8. Did Defendants allow similarly situated white-owned facilities that would, under DEQ's rationale likewise be non-compliant to continue operating without a Simple ACDP permit? suggested answer: yes

**UNDISPUTED FACTS**: Defendants have knowledge that the other white owned facilities are operating without a Simple ACDP. see exhibit 11, 18 and 64

9. Were Defendants demands on NW Metals irrational and wholly Arbitrary, motivated by spiteful, racially discriminatory efforts to punish plaintiffs for reasons unrelated to any legitimate state objective? suggested answer: yes

**UNDISPUTED FACT**: see exhibit 28  page16, lines 9-23 and exhibit 65

10. Was DEQ motivated by an intent to discriminate against NW Metals based on and because of Anottas's race and national origin? suggested answer : Yes

**UNDISPUTED FACT**: Material and documents that would have likely shown that Defendants were motivated by intent to discriminate on  plaintiffs based on race and origin have either been destroyed or withheld.

11. Was Defendant's action to shut down  NW Metals shredder intentional, outrageous, and outside the bounds of socially tolerable conduct? Suggested Answer: yes

**UNDISPUTED FACT**: see Exhibit 19,  exhibit 30 , exhibit 66

12. Did defendants know the damage they inflicted on Anotta exceeded mere financial damage and exuded to Anotta's personal life and emotional health? suggested answer: yes

**UNDISPUTED FACTS**: Material and documents that would have likely shown that Defendants knew the damage they inflicted exceed mere financial damage and exude to Anotta's personal life and emotional health have either been destroyed or withheld from production.


## IV. LEGAL ARGUMENT

### A. Summary Judgment Standard

To state a claim under 42 U.S.C. § 1983, Plaintiffs must allege two elements: First that the defendants have deprived them or caused them to be deprived of a right secured by the Constitution and laws of the United States and second, that the deprivation occurred under the color of state law *Adickes v. S. H Kress & Co., 398 U.S 144, 150 (1970)*. Defendants DEQ et. al caused NW Metals Inc. and Anotta to be subjected to the deprivation of their rights secured by the Fourteenth Amendment of the united States Constitution, which provides that *"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."*

To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c); Rivas v. City of Passaic, 365 F.3d 181, 193 (3d Cir. 2004)*.

The plain language of Rule 56(c) mandates the entry of summary judgment,

after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)*. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of their case with respect to which they have the burden of proof. "The standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a) . . . ." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)*.

Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Rule 56(e) permits a summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.

**B .Spoliation of Evidence, Perjury and Willful Denial to Answer Questions Under Oath:**

**1.   Spoliation of Evidence:**

a. Records and facts show that defendants  destroyed or withheld evidence. Mr. Graiver in his testimony exhibit 5, page 80 line 25, page 81 line 4-6 stated that

communications regarding  NW Metals were deleted or destroyed.

Mr. Graiver during his deposition agreed to provide communication between the house speaker's office and defendants that was not provided during the records production request. see exhibit 5, page 89 line 24 & 25, page 90 lines 1 - 11.  A followup email was sent to counsel requesting materials, see exhibit 31. To this day materials have not been provided.


b. Elizabeth Everman testified that documents regarding NW Metals went missing and those documents to this day have not been found. exhibit 33, page 18 line 2-19, page 20 lines 3-21, pages 21-23, pages 30 - 41. State Of Oregon Record Retention policy requires that DEQ retain source facility and permit files for 20 years. exhibit 52


c. Exhibit 44 page 2 referencing other communication regarding NW Metals missing.


d. NW Metals requested production of files in folder # 11091. exhibit 34. Defendant's production response stated that no such files or folder  exist.

exhibit 36. Communication between DEQ employees clearly suggested that facility 11091 folder exists.  exhibit 37. facility Compliance folder 11091 is either destroyed or is  intentionally being withheld.


e.  DEQ directors (Rechard Whitman and Leah Feldon) and Administrator( Nina Deconcini) likely conducted multiple in-person and offline meetings in an attempt to conceal communication of their discussions in violation of the discovery order.

see exhibit 38, page 36 lines 4-24, page 60 line 15-23. The Directors and Administrator were fully aware that they were required to preserve all materials once they were notified of the pending litigation. Directors are required to retain correspondence, staff meeting records calendar and scheduling records according to the State Agency general records retention schedule. Defendants wilfully disregarded the States records retention policy that requires them to store all staff meeting records and correspondence schedules for 5 yrs. exhibit 53 pages 1-3

5. Defendant Nina Deconcini as the administrator of the agency had discussions with certain individuals that likely wanted NW Metals to be denied operating its metal shredder and cease as a viable business. Some of the individuals were consultants to the other metal shredding facilities operating without hour limitation who had conflict of interest. Discussions and communications with these individuals were not provided during discovery. The communications are likely destroyed or withheld from the discovery request. see exhibit 38, page 11 lines 15-21, pages 12-14.

6. Mr. Richard Whitman testified that NW Metals owners' race must have been discussed at one point of the meeting or perhaps in the news accounts when the fire occurred. Exhibit 54 page 22 line 16- 24. Upon research no news reporting was found discussing NW Metals ownership race. It is likely that Mr. Whitman and other officials discussed NW Metals ownership race in their meeting but no records were retained in accordance with the State Record Retention Schedule.

7. Other concerns of spoliation of evidence is that agency employees after being aware of pending litigation likely moved communication regarding NW Metals

offline so the information would not be available for discovery.

8. It is likely that documents destroyed or being withheld are communication between defendants,  state agencies, and other individuals with ill will and racial hate towards plaintiffs  that discussed defendants willful disregard of the law, plaintiffs national origin and race, communications of intent to inflict emotional distress, and criminal acts by defendants, and other state officials.

## 2. SPOLIATION INFERENCE:

Spoliation is the intentional destruction, mutilation, alteration, or concealment of evidence, *"BLACK'S LAW DICTIONARY 1437 (8th ed. 2004)."* The theory behind spoliation inference is that when a party has destroyed evidence or attempts to conceal,  it shows that the party had consciousness of guilt or other reasons to avoid evidence.  Hence, the court will conclude that the evidence was not in the spoliator's favor. Spoliation is invoked when a party alleges that its opposing party has caused a crucial piece of evidence to be unavailable. *"E.g., Moghari v. Anthony Abraham Chevrolet Co., 699 So. 2d 278, 279 (Fla. Dist. Ct. App. 1997)."* If an opposing party is responsible for the destruction of relevant evidence, it is within the  court's discretion to impose sanctions on that party. *"See, e.g., Patton v. Newmar Corp., 538 N.W.2d 116, 119 (Minn. 1995)"* . The court is afforded broad authority in its determination as to which sanction is to be imposed on a party for spoliation. *" 27 C.J.S. Discovery § 182 (2009)"*. To determine the severity of

sanctions, the court should weigh several countervailing factors, *"James T. Killelea, Note, Spoliation of Evidence: Proposals for New York State, 70 BROOK. L. REv. 1045, 1055 (2005)."* one of which is the prejudice to the opposing party resulting from the spoliation. "This prejudice is regarded as being more significant than other factors, most notably the state of mind of a party alleged to have destroyed the documents. *See Huhta v. Thermo King Corp., No. A03-1961, 2004 Minn. App. LEXIS 722, at \*9-10 (Minn. Ct. App. June 29, 2004)."*

 FRCP 37(b)(2) explicitly authorizes courts to impose sanctions on a party for failure to comply with a discovery order. *" FED. R. Civ. P. 37(b)(2)(A) ("If a party or a party's officer, director, or managing agent . .. fails to obey an order to provide or permit discovery .. .the court ... may issue further just orders.")"*. This provision gives courts the authority to sanction parties that destroy documents in direct violation of a discovery order. The inherent authority of courts is also recognized as an additional source of power for courts to impose sanctions. *"Chambers v. NASCO, Inc., 501 U.S. 32, 43-51 (1991)."* This enables courts to impose sanctions on those parties who destroy evidence in contexts other than in direct violation of a discovery order.

The spoliation doctrine interplays with the duty to preserve, a duty which stems from the common law obligation to preserve evidence when a party "has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to the future litigation. Indeed, "a finding of spoliation is necessarily contingent upon the determination that a litigant had the duty to preserve the documents in question. The spoliation doctrine has generally been applied to punish those parties who destroy relevant documents in bad faith. In essence, where the duty to preserve potentially relevant evidence clearly exists, and that duty is disregarded and consequently prevents the production of relevant

documents, the court sees fit to punish the party responsible for destroying those documents. The rationale for this punishment is rooted in the theory that the destruction of documents hinders the discovery process and unfairly prejudices the requesting party because potentially relevant evidence is unavailable to them due to the conduct of their adversary. As such, the party in the wrong must always be held accountable for its actions.

The filing of the complaint provides the parties with express notice that documents that are relevant to that litigation must be preserved, simply by virtue of the fact that litigation has commenced. Once pleadings are filed, it is presumed that because parties have been given notice of the issues to be litigated, it is within reason that the parties are, or ought to be, aware of what information and what sorts of documents may be categorized as relevant at later stages of the litigation, and most notably, during discovery.

*See, e.g., Computer Assoc. Int'l, Inc. v. Am. Fundware, Inc., 133 F.R.D. 166, 168-70 (D. Colo. 1990) (sanctioning a default judgment issued against a party that knowingly destroyed evidence after a litigation between the parties had commenced).*

FED. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). See Maria Perez Crist, Preserving the Duty to Preserve: Thus, the duty to preserve is an affirmative duty imposed on parties to refrain from destroying documents, and the like where it is reasonably foreseeable that they may be requested in discovery. It is the breach of this duty to preserve potentially material information that invokes application of the spoliation doctrine based on the actions of the party that destroyed these kinds of documents and allows courts to impose sanctions for the violation of the duty.

A party's duty to preserve potentially relevant documents is paramount to

understanding the spoliation doctrine. The concept of the "duty to preserve" is founded on the idea that parties to litigation are required to preserve documents or other materials that may be requested as potential evidence during the discovery process. *See, e.g., Beil v. Lakewood Eng'g & Mfg. Co., 15 F.3d 546, 552 (6th Cir. 1994); Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1308 (1Ith Cir. 2003).* This duty is long standing, widely recognized, and established in federal law. *See Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001); Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001); Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72 (S.D.N.Y. 1991).*

The concept of spoliation springs from the presumption that the documents at issue were destroyed when litigation was either pending or reasonable

The consequences of a party's violation of its duty to preserve may be far-reaching. At a minimum, spoliation by a party has a negative impact not only on a particular litigation, but also on the justice system as a whole. Spoliation strikes at the heart of the most fundamental assumptions that underlie the American justice system, as it "undermines the efficacy of the adversarial system" because it prevents a party from adequately proving or defending a claim. In order to combat and deter spoliation, courts have the discretion to impose sanctions against parties that destroy potentially relevant documents. *United States ex rel. Koch v. Koch Indus., 197 F.R.D. 463, 482 (N.D. Okla. 1998).*

*See FED. R. CIv. P. 26(b)(1) (defining the scope of pre-trial discovery requests as "any matter relevant to the subject matter involved in the action" so long as it appears to be "reasonably calculated to lead to the discovery of admissible evidence").* Thus, documents that are destroyed fit within this standard, and may lead to the imposition of sanctions for spoliation.

*See Computer Assoc. Int'l, Inc. v. Am. Fundware, Inc., 133 F.R.D. 166, 168 (D.*

*Colo. 1990).*

*See Crist, supra note 29, at 43* ("The American justice system is premised on the fair adjudication of disputes through both sides obtaining and presenting the relevant evidence.").

*Killelea, supra note 10, at 1046.*

*See E\*TRADE Sec. LLC v. Deutsche Bank AG, 230 F.R.D. 582, 586 (D. Minn. 2005).*

### 3. Punishment for a Wrongful Act, and Remediation.

Each of these purposes attempts to cure the prejudice that resulted to the injured party as a consequence of the spoliation by its adversary.Sanctions for spoliation, and the circumstances under which they are imposed, vary across jurisdictions. However, after establishing that the duty to preserve has been breached, courts should traditionally make the determination as to whether sanctions are warranted based on the three part test set forth in *Schmid v. Milwaukee Electric Tool Corp.46.* Additionally, in particularly serious situations, courts also consider whether the sanctions are likely to deter future parties from similar conduct. Once a court determines that some sort of sanction is warranted for a party's destruction of documents, that court has "broad authority" to impose a sanction which sufficiently implements the established underpinnings of the spoliation doctrine. Courts are afforded this broad authority in order to enable them to "level the evidentiary playing field and ... sanction the improper conduct.: Federal Rule of Civil Procedure 37(e): While a wide range of sanctions may be-and have-been imposed by the courts, "The most frequent sanctions for the destruction of evidence include fines or summary judgment for the party prejudiced by the destruction of

evidence." The sanction that a court chooses to impose must be the most appropriate under the circumstances of the particular case and must be necessary in order to redress abuse to the judicial system caused by the destruction of documents by a party.

In crafting sanctions for spoliation, there is significant attention paid to the prejudicial effect of the destructive act on the innocent party.

*Daniel Renwick Hodgman, Comment, A Port in the Storm?: The Problematic and Shallow Safe Harbor for Electronic Discovery, 101 Nw. U. L. REv. 259, 273 (2007) ("Evidentiary sanctions are predominantly compensatory, allowing courts to 'level the playing field' when one party destroys evidence that circumstances suggest would aid the non-spoliating party's case.").*

 When a court makes the determination as to which sanction to impose on a spoliating party, it must keep in mind that, absent a sanction, "a spoliating party would obtain an unfair advantage and unlevel playing field when prosecuting or defending its case."

*Id at 272; see also Trigon Ins. Co. v. United States, 204 F.R.D. 277, 284, 291 (E.D. Va. 2001) (finding that the U.S. government's failure to preserve certain documents relating to communication between experts and consultants materially prejudiced the plaintiffs ability to cross-examine witnesses).*

Thus, in crafting sanctions, the desired result of the court should be to place the prejudiced party back in the position it would have been, absent the spoliation.

*Trigon Ins. Co., 204 F.R.D. at 287*

 Sanctions for spoliation are not dependent on a particular state of mind at the time of the act that destroyed the documents.

*See Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 113 (2d Cir. 2002) ("Discovery sanctions ... may be imposed upon a party that has breached a*

*discovery obligation not only through bad faith or gross negligence, but also through ordinary negligence."); see also Hodgman, supra note 63, at 273 ("Courts generally grant evidentiary sanctions regardless of the spoliating party's state of mind; the evidence can be missing due to negligent, intentional or reckless conduct.")*

 That is, the application of sanctions does not require a finding of bad faith on the part of the party responsible for destroying the documents at issue in a particular case.

Although a finding of bad faith on the part of the destructing party is not necessary, "it is definitely the primary factor to consider in weighing the appropriateness of the instruction*." Concord Boat Corp. v. Brunswick Corp., No. LR-C-95-781, 1997 U.S. Dist. LEXIS 24068, at \*22 (E.D. Ark. Aug. 29, 1997)*  These countervailing factors are balanced in order to determine an appropriate sanction in particular circumstances.

 *Trigon Ins. Co., 204 F.R.D. at 286, 288*

 The rationale for this methodology is based on the theory that if a party is willing to take the risk of getting caught and sanctioned by the court for destroying relevant documents or other materials, the inference may be drawn that these destroyed documents are likely to harm that party's case.

 *See Charles R. Nesson, Incentives to Spoliate Evidence in Civil Litigation: The Need for Vigorous Judicial Action, 13 CARDOZO L. REv. 793, 795-96 (1991) ("The risk of being caught suppressing evidence clearly depends on the particular type of evidence and the particular circumstances of the case."); see also Trigon Ins. Co., 204 F.R.D. at 284 (quoting Anderson v. Nat'l R.R. Passenger Corp., 866 F. Supp. 937, 945 (E.D. Va. 1994)).*

**4. Perjury:**

Perjury committed in the course of this action .

1.Mr. David Graiver testified under oath during the Administrative Hearing that there is no other mechanism aside from a permit to put an enforceable limit to NW Metals operation see exhibit 5, page 54 line 20-24. Mr. Graiver was aware that there were other mechanisms to put enforceable limits. see exhibit 5, page 54 lines 3-18, page 54 line 25, page 55 lines 1-2. Decision of ALJ that a Simple ACDP was required and imposed a $10,165 fine  was based on Mr. Graivers' false testimony as there were no other witnesses that testified on behalf of DEQ regarding the Simple ACDP requirement. Mr Graiver had access to the directive Flowchart that clearly instructed that a Simple ACDP permit is not required. see exhibit 3


2. Mr. Graiver denied a Type II intent to construct is a permit. Mr Grivier  knew that it was a  permit but tried to distort the fact. see exhibit 5, page 20 line 5-7. Mr Gravier on the other hand acknowledges that Schnitzers steel and Rivergate scrap metal's Type II intent to construct documents  is a permit. see exhibit 42.


Mr. Graiver in his declaration in opposition to NW Metals motion to modify stated that NW Metals never submitted the required notice of intent to Construct permit for its current shredder. see exhibit 11, page 3 line 3. Mr Graiver committed perjury as he was well aware that the Type II notice of intent to construct submitted and approved was for the new shredder as it was clearly discussed via phone call and confirmed via email. see exhibit 59


Ali Mirzakhalili and Elizabeth Everman testified that any permit writer in fact would know that the type II intent to construct was an ACDP permit. Exhibit 25

page 17 line 24-25, page 18 line 4-5 and exhibit 33 page 43-47. Mr Graiver knew well that a type II intent to construct was a permit.

Mr. Graiver committed perjury on his declaration in support of motion for order to show cause re -shredder permit. see exhibit 55 page 4 line 13 -14 . Unless Mr Graiver was under the influence of drugs when he approved the Type II intent to construct permit, Mr. Graiver admitted to use of drugs, (see exhibit 5 page 10 line 13-18) Mr Graiver must have known NW Metals had an ACDP, as the Type II intent to construct ACDP was approved by himself .

Courtney Brown provided an affidavit in support of motion for order to show cause re -shredder permit. exhibit 56, page 3 lines 6-7. Courtney Brown committed perjury as she knew that NW Metals was operating under the Type II intent to construct ACDP permit.

Mr. Stven Dietrich, during the injunction hearing on February 24th, 2020 testified under oath that NW Metals was operating without an air permit. Mr. Dietrich committed perjury as he was aware that NW Metals was operating under the Type II intent to construct an ACDP permit.

## 5. WILFUL DENIAL TO ANSWER QUESTIONS UNDER OATH:

Mr. Steven Dietrich, during deposition on March 15th, 2024 refused to answer questions under oath. Mr. Dietrich in fact stated he could not remember signing the simple ACDP, an ACPD that was a contentious topic for years. exhibit 26

## V. The Individual Defendants Violated Plaintiffs' Right Under the Fourteenth Amendment.

In determining whether a public official is liable under plaintiffs' 42 U.S.C. § 1983 cause of action, a court must determine whether the Defendants violated Constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald, 457 U.S. 800,818, 102 S. Ct. 2727, 73 L. Ed.2d 396 (1982.* What the reasonable Defendants would have known is determined at the time of the tortious conduct, and qualified immunity is determined objectively but what a reasonable person should know. *Harlow, 457 U. S. at 818-19.* Defendants are individuals with high level education and legal background. They reasonably knew they were violating plaintiffs' constitutional rights. Plaintiffs in multiple communications have informed defendants that they were violating their constitutional right.

## Defendants Conspired to Violate the Plaintiffs Right Under 42 U.S.C. § 1983.

Individual defendants conspired to violate the plaintiffs' right under 42 U.S.C. § 1983  by entering into an agreement to violate plaintiffs civil rights, acting in concert, taking the overt act of forcing stoppage of plaintiffs shredder operation, uneven treatment, denying application of applicable rules and forcing plaintiff to operate as a new source rather than an existing source.

## V. Undisputed Facts Establish the Deprivation of a Right Secured by the Constitution.

### A. The Unlawful Forced Shutdown of the Shredder and Denial to Apply the

**Law as Stated in the Rule Violated the 14th Amendment Right to Procedural Due Process:**

NW Metals was unlawfully forced to stop operating  its Arjes 950 shredder from March 3rd, 2020 through March 25th 2021.

DEQ and its agents knowingly provided false fillings, declaration, affidavits and testimony alleging NW Metals Inc was operating without a Air Contaminant Discharge permit(ACDP) to secure an injunction at the Multnomah Circuit  Court case No. 19CV49704 . On Feb 24th, 2020. exhibit 55 and 56.

Based on the parties' motions, the memoranda, the arguments of counsel and courts finding of facts the  court dissolved the preliminary injunction. exhibit 58

Even if defendants rational that facilities that emit more than 10 tons of VOC are required to obtain a Simple ACDP, NW Metals  election to have its VOC emission modeled by actual usage in accordance with ORS 468A. 337 (3) (a)  would have reduced its VOC emissions to less than 10 tons per year which would have precluded NW Metals from the requirement that triggers a Simple ACDP. Defendants denied or wilfully disregarded NW Metals request.

Defendants forcefully using legal threats with unlimited resources required NW Metals to apply for a Simple  ACDP even though defendants knew that it was not required by rule. OAR 340-210-0225 (2) states that a facility operating under a Type II intent to construct ACDP is not required to obtain a Simple ACDP, a permit required under OAR 340-216-0010. exhibit 6 page 2 (2)

Forcing  NW Metals to apply  for Simple ACDP while it is operating under a Type II notice of intent to construct ACDP is a rule change. Defendants do not have rule making  authority as decided by the appeals court. see exhibit 10.

Defendants to this day are forcefully regulating  NW Metals as a new Source even though  defendants are aware and testified that NW Metals is an existing Source. see exhibit 38, page 40 line 15-20.

Plaintiffs notified DEQ that shredding operations of NW Metals had moved to its new location at 9537 N Columbia Blvd, Portland OR 97203 on August 27th, 2020. see exhibit 63. Clean Air Oregon Definition states that if a facility moves prior November 17, 2021, the facility is considered an existing source. see exhibit 51, page 3 #33

New source classification limits NW Metals shredder hours of operation to 6.75 hrs per day. As an existing source NW Metals hour of operations of its shredder should have exceeded 14 hrs. Ali Mirzakhalili (DEQ air Quality Administrator) testified that NW Metals is an existing source. exhibit 25, page 32 line 10-12

Plaintiffs on multiple occasions have requested defendants to apply the applicable rules and laws appropriately. exhibits 27, exhibit 60 and exhibit 61. Defendants to this day have knowingly, and willfully disregarded the law and deprived plaintiffs of their constitutional rights. The laws and administrative rules as written are straightforward with no ambiguity. Individual defendants are persons with a high level of education and legal backgrounds that they should have known that they were depriving plaintiffs constitutional rights.

**B. The Deprivation of the Shredder Operation by NW Metals Inc Constitutes " state action."**

**1.  Overview of Key U.S Supreme Court Decisions.**

The only action by the first section of the Fourteenth Amendment is action that can fairly be said to be that of the States. *Adickes, supra, 398 U.S. at 169 citing Shelley v. Kraemer, 334 U.S. 1, 13 (1948)*. Accordingly, Plaintiffs are deprived of a right secured by the Constitution only if there has been a "state action." Decisions by the U. S. Supreme Court establish that individuals who initiate state court proceedings that deny equal protection or due process to their adversaries or others can be participants in "state action."

Action of a state court is unquestionable state action. In *Shelley, v. Kraemer* the court held " That the action of state courts and of Judicial officers in their official capacities is to be regarded as action of the State within the meaning of the fourteenth Amendment is a proposition which has long been established by decisions of this court." *334 U.S. at 14.*  The action of state courts in imposing penalties or depriving parties of other substantive rights without providing adequate notice and opportunity to defend has, of course, long been regarded as denial of the due process of law guaranteed by the fourteenth amendment**.**" *Id. at 16.*


**F. The Deprivation of Plaintiffs Ability to Operate its Shredder as Well as Unfair Treatment Created Unequal Protection:**


a.  Defendants are aware that there are only 4 metal shredding facilities in the state of Oregon including NW Metals Inc.

b.  Defendant only ordered  NW Metals to cease operating its metal shredder while allowing the other white owned metal shredding facilities to continue operating their shredders without the permit the defendants allege is required to operate a metal shredder.

c.  DEQ agents agreed and testified that  allowing the other shredding facilities to operate without a permit would put them at an unfair advantage over NW Metals that comply and operate under the Simple ACDP that limits it to 6.75 hrs operation per day yet allowing the other shredding facilities to operate without hour limitation. see exhibit 25, page 38 and 39 and exhibit 50, page 9(unfair advantage),

d.  DEQ agents conducted multiple surveillance on NW Metals without a court order  yet they were not conducting such kind of surveillance on the other shredding facilities. see exhibit 5, page 16, line 25, pages 17, 18 and 19 lines 1- 8.

e.  DEQ applied unfair civil penalty assessment for an alleged same violation of NW Metals Inc and Rivergate scrap metal. DEQ imposed a civil penalty of $10,165.00 against NW Metals for allegedly operating its shredder without a ACDP permit for 1 week. DEQ on the other hand imposed a civil penalty of only 3.209.00 to Rivergate Scrap metal for allegedly operating its shredder without an ACDP since 2012. What is very striking about the civil penalty is that DEQ issued a fine of 209.00 for economic benefit for Rivergate scrap metal for operating without an ACDP. Rivergate Scrap Metals has been

operating much longer than NW Metals. On the other hand DEQ issued NW Metals Inc a fine of 5,356.00 for economic benefit  for operating without an ACDP for less than 72 hours. see exhibit 62 and 64.

f.  DEQ received Schnitzers steel and Rivergate scrap metal ACDP application in 2019. DEQ intentionally failed to process the application in a timely manner because it is likely that both shredding would not be able to continue as a viable company if they were to operate under the conditions of such a permit. see exhibit 7 and 8. In fact DEQ does not even acknowledge that the ACDP permit application for both facilities  are received. It is  the practice of DEQ to stamp all received applications with date received. see exhibit 9. NW Metals has conducted several communications over time with defendants and other DEQ agents regarding the unfair and unequal treatment the other facilities gain by operating without an ACDP that the agency alleges is required to operate a metal shredder. Instead of leveling the playing field by requiring all facilities to operate under the same permit as alleged, defendants and agency officials have engaged in making excuses, interpreting the law as they wish  and  deflecting the subject matter.  In the meantime NW Metals has paid approximately 40,000.00 dollars in permit fees yet the other facilities have not been issued a permit nor have they paid the permit fees. According to witnesses, Mr. Graiver stated that the agency does not deal with the other facilities in the manner they deal with NW Metals because the other facilities  have many attorneys and they are off limits and their matter is referred to the EPA.  It is likely that defendants will resort to making excuses on why they are treating NW Metals unfairly and depriving its rights indifferent from the other facilities. Any explanations

outside the law why the defendants are allowing the other facilities to operate a shredder  without a permit they allege is required should be rejected.

g.  The community DEQ alleges to protect filed a petition requesting DEQ to treat the plaintiff the same as other white owned shredding facilities in Portland. see exhibit 30.

h.  Defendants' action not only violated Plaintiffs rights, but it also violated the rights of the employees that worked for the NW Metals Inc. NW Metals employees had the same right to life, liberty and the pursuit of happiness as employees of Rivergate Scrap metal and Schnitzers Steel.  NW Metals employees rights should have been protected equally as the employees working for the other white owned metal shredding facilities. NW Metals employees had to endure such an unfair treatment of being without work and even lose their livelihood just because they worked for a black owned business. see exhibit 67 and 68.

## V. CONCLUSION AND REQUEST FOR RELIEF.

On the basis of undisputed material facts establishing the spoliation of evidence, deprivation of due process, and unequal treatment, summary judgment is warranted. The court should grant summary judgment on the issue of the defendants liability under Section 1983, declare defendants violated plaintiffs 14th

amendment constitutional right, permanently enjoin Defendants from taking
retaliatory action and award the plaintiffs the following damage caused by
stoppage of the shredder which created a financial damage to NW Metals in the
amount of 4,466,858,332.00( see Declaration of Anotta, calculation of financial
loss and punitive damage. exhibit 69), punitive damage 44,668,583,320 for a total
of 49,135,441,652.00 and attorney fees and cost pursuant to 42 U.S.C. 1988.
Sanctions this court sees fit for spoliation of evidence. Sanctions this court sees fit
for perjury committed.


Dated: June 27th, 2024


NELSON & NELSON


 /s/ Roscoe Nelson                              /s/ Moyata Anotta
**Roscoe C. Nelson, Jr., OSB No. 732218**    **Moyata Anotta**

Email: attorneys@roscoenelson.com          Pro Se Plaintiff

Telephone: 503.222.1081

Of Attorneys for Plaintiff NW Metals, Inc.