UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


MOYATA ANOTTA, an individual; and NW
METALS, INC., an Oregon corporation,

               Plaintiffs,

      v.

OREGON DEPARTMENT OF
ENVIRONMENTAL QUALITY, an Oregon
governmental regulatory agency; RICHARD
WHITMAN, an individual; LEAH FELDON, an
individual; NINA DECONCINI, an individual;
DEREK SANDOZ, an individual; COURTNEY
BROWN, an individual; and STEVE DIETRICH, an
individual,

               Defendants.

Case No. 3:22-cv-00953-YY

OPINION AND ORDER


YOU, Magistrate Judge.

       This case revolves around a large fire in March of 2018 at a metal scrap yard operated by

plaintiff Moyata Anotta in Portland, and the ongoing dispute between Anotta and NW Metals,

Inc. (collectively "plaintiffs") and the Oregon Department of Environmental Quality ("DEQ")

over site cleanup and plaintiffs' efforts to restart the business.[1] After the fire, DEQ initiated an

---

[1] According to defendants, and not contradicted by plaintiffs, the five-alarm fire at NW Metals
burned for two days, consuming "old vehicles, tires, vehicle fluids, [and] vehicle plastics,"

administrative enforcement proceeding against plaintiffs in 2018, and plaintiffs unsuccessfully appealed the resulting fines against NW Metals to an Administrative Law Judge ("ALJ"), the Environmental Quality Commission, and the Oregon Court of Appeals.[2] DEQ later filed suit against plaintiffs in state court after plaintiffs failed to comply with DEQ orders regarding site cleanup and permits for hazardous waste and air pollutants, and obtained an injunction and a judgment against plaintiffs in August of 2021.[3]

Plaintiffs filed this case in state court on June 3, 2022, essentially asserting that DEQ wrongly required plaintiffs to obtain a so-called Air Contaminant Discharge Permit ("ACD Permit" or "ACDP") before operating a new metal shredder, and wrongly imposed certain conditions on the new shredder's operation under the ACD Permit that DEQ eventually issued to plaintiffs in March of 2021. *See* Not. Removal, Ex. 1 ("Compl.") ¶¶ 11–51, ECF 1-1. Plaintiffs assert two civil rights claims under 42 U.S.C. § 1983, alleging violations of plaintiffs' rights to due process and equal protection under the Fourteenth Amendment, a claim alleging discrimination under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d, and a state law claim for intentional infliction of emotional distress ("IIED"). Compl. ¶¶ 33–51, ECF 1-1. Defendants timely removed the case to this court in July of 2022. *See* Not. Removal 2–3, ECF 1.

Currently pending are the parties' cross motions for summary judgment (ECF 37, 54). As explained more fully below, plaintiffs' claims suffer from a number of deficiencies, any one of which is sufficient to grant summary judgment in defendants' favor. Plaintiffs' claims are largely time-barred by the applicable two-year statute of limitations because many of the claims accrued

---

releasing "toxic and cancer-causing agents into the air and ground," destroying several surrounding buildings, and causing the evacuation of residences within a four-block radius. Def. Mot. Summ. J. 3, ECF 54; *see also* Graiver Decl. ¶ 2, ECF 51; Deconcini Decl. ¶ 4, ECF 55.
[2] Graiver Decl. ¶¶ 3–11, 19, 30, ECF 51.
[3] Smith Decl., Ex. 7 at 3–4, ECF 53-7.

in 2018 or 2019, and plaintiffs allege that DEQ was discriminating against them as far back as March of 2020. Plaintiffs did not file suit until June of 2022, which is outside the two-year limitations period. Any claim that is not time-barred by the statute of limitations is barred by the doctrine of claim preclusion—there has been both an administrative proceeding and a state court case regarding the dispute between plaintiffs and DEQ over the permitting requirements for plaintiffs' new shredder, and plaintiffs already had the opportunity to raise any of the claims that they raise here in those previous proceedings. There are other problems as well: plaintiffs cannot establish a constitutional right to the ACD Permit they seek, and there is no evidence from which a reasonable juror could conclude that DEQ's post-fire cleanup and enforcement efforts against plaintiffs were done with intent to harm plaintiffs or were sufficiently outrageous or extreme to sustain an IIED claim. Therefore, defendants' motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied as moot.

## I.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324 (citing FED. R. CIV. P. 56(e)).

The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## II.    Discussion

All of plaintiffs' claims center around the allegation that DEQ has wrongfully hampered plaintiffs' efforts to restart their metal salvage operation after the NW Metals fire in March of 2018. Sometime around June of 2018, plaintiffs submitted to DEQ a "Notice of Intent to Construct" a new metal shredding machine to replace the one destroyed by the fire.[4] Initially, DEQ approved plaintiffs' use of the new shredder under the Notice of Intent to Construct because "DEQ originally determined that an [ACD Permit] . . . was not required" for the new shredder.[5] However, in August of 2018, DEQ informed plaintiffs that an ACD Permit was required because DEQ had "re-interpreted the state's [applicable] regulation to make it consistent with federal law," which altered the way that new shredder's emissions were measured for permitting purposes.[6] Plaintiffs objected and insisted that the "Notice of Intent to Construct" was actually a "permit" that should have allowed them to operate the new shredder without a separate ACD Permit. *See* Pl. Memo. Summ. J. 11, ECF 39 (asserting that "[a] facility operating under Type 2 [Notice of Intent to Construct] is not required to obtain a permit" under DEQ rules).

According to plaintiffs, they did not operate the replacement shredder between March 3, 2020, and March 25, 2021. Pl. Memo. Summ. J. 27, ECF 39. Eventually, plaintiffs applied for

---

[4] *See* Graiver Decl. ¶ 3, ECF 51.
[5] *Id.*
[6] *Id.* ¶ 5.

and DEQ issued an ACD Permit in March of 2021 that allowed plaintiffs to operate a shredder at NW Metals' new location in Portland,[7] although this too led to a dispute. Plaintiffs assert that DEQ wrongly concluded that this replacement shredder was a "new source" and thus subject to stricter limitations than an "existing" source, including among other things the number of hours this "new" shredder could be operated. Pl. Memo. Summ. J. 27–28, ECF 37-1.[8]

It is these two decisions—(1) DEQ's insistence beginning in 2018 that plaintiff's "Notice of Intent to Construct" did not authorize plaintiffs to operate their new shredder and that they needed to apply for an ACD Permit, and (2) DEQ's issuance of the ACD Permit in March of 2021 with the operational limitations applicable to "new sources" of air pollution—that form the basis of plaintiffs' claims and the analysis that follows.

### A.    Discrimination Claims

Plaintiffs' equal protection and Title VI claims assert that DEQ's actions in requiring them to apply for an ACD Permit or issuing an ACD Permit with "new source" limitations were discriminatory because NW Metals is a "black-owned business" and other metal salvage companies owned by white individuals were not subject to the same restrictions. Compl. ¶ 41–42, ECF 1-1.

As for DEQ's first decision in 2018 that plaintiffs could not rely on the "Notice of Intent to Construct" and were required to apply for an ACD Permit for the new shredder, plaintiffs were aware of the facts underpinning their allegations of discrimination since at least March of 2020. Because plaintiffs did not file this suit until June of 2022, any claims accruing before June of 2020 are time-barred by the two-year statute of limitations.

---

[7] Graiver Decl. ¶ 23, ECF 51.
[8] *See also* Gravier Decl. ¶ 23, ECF 51,

Section 1983 does not contain a specific statute of limitations; instead, federal courts "apply the forum state's statute of limitations for personal injury actions[.]" *Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1198 (9th Cir. 2014) (citation and internal quotation marks omitted). Accordingly, Oregon's two-year statute of limitations for personal injury actions, O.R.S. 12.110(1), applies to section 1983 claims. *Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2002). Title VI also does not have a specific statute of limitations. The Ninth Circuit has treated claims under Title VI similarly to those under section 1983, and thus courts in this district apply a two-year limitations period to these claims as well. *Taylor v. Regents of Univ. of California*, 993 F.2d 710, 712 (9th Cir. 1993) ("[C]laims brought under 42 U.S.C. § 2000d are governed by the same state limitations period applicable to claims brought under § 1983."); *Upchurch v. Multnomah Univ.*, No. 3:19-cv-00850-AC, 2021 WL 6622254, at *16 (D. Or. Dec. 31, 2021), *report and recommendation adopted,* No. 3:19-cv-850-AC, 2022 WL 205731 (D. Or. Jan. 24, 2022).

As mentioned, DEQ's decision regarding the "Notice of Intent to Construct" occurred in August of 2018. Although plaintiffs assert in the briefing that they "were made aware of a potential violation under U.S.C 42 1983 by counsel on June 5th 2020," Pl. Resp. Mot. Summ. J. 3, ECF 60 (as written), the record shows that plaintiffs believed the discrimination had been ongoing for some time before that. An email from plaintiff Anotta to various individuals at DEQ dated June 11, 2020, states that day was "day 100 of discrimination and injustice against NW Metals Inc."[9] Anotta had therefore been aware of defendants' alleged discrimination since at least March 3, 2020 (i.e., 100 days before June 11, 2020). Thus, any claim based on conduct occurring before March 2, 2020, including DEQ's decision in 2018 that plaintiffs' "Notice of

---

[9] Brown Decl., Ex. 5 at 1, ECF 56-5.

Intent to Construct" did not authorize them to operate the new shredder, is time-barred because plaintiffs did not file suit until June of 2020.

In an attempt to avoid the statute of limitations, plaintiffs assert that the continuing violations doctrine should apply and the limitations period should begin anew "everyday the defendants willfully denied plaintiffs constitutional rights to operate its shredder." Pl. Resp. Mot. Summ. J. 3, ECF 60 (as written). The Ninth Circuit has limited the application of the continuing violations doctrine to cases alleging a class-wide discrimination claim or for a limited category of cases involving hostile work environment claims. *See Monical v. Jackson Cnty.*, No. 1:17-cv-00476-YY, 2021 WL 1110197, at *5 (D. Or. Mar. 23, 2021). Neither is at issue here. Rather, plaintiffs' claims are individualized ones that arise from discreet allegedly discriminatory acts, and as explained above, plaintiffs believed as far back as March of 2020 that defendants were discriminating against them in requiring an ACD Permit for plaintiffs' shredder. Therefore, the continuing violations doctrine does not apply to save plaintiffs' discrimination claims that accrued before June of 2020. *See Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (explaining that "mere continuing *impact* from past violations is not actionable") (simplified).

As for plaintiffs' discrimination claims regarding DEQ's issuance of the 2021 ACD Permit for plaintiffs' "new" shredder with restrictions on the hours it could be operated, that claim may have been timely brought but it otherwise fails because plaintiffs already had the opportunity to litigate this issue in state court. Under Oregon law, the doctrine of claim preclusion "bars plaintiffs from prosecuting another action against the same defendant where the claim in the second action 1) is based on the same facts at issue in the first action; 2) seeks an additional or alternative remedy to the one sought earlier; and 3) is of such a nature that it could have been joined in the first action." *Mahaffey v. Quality Loan Serv. Corp. of Washington*, No.

6:17-cv-01191-MK, 2019 WL 7858402, at *7 (D. Or. Dec. 20, 2019); *see also Johnson v. Altamirano*, 418 F. Supp. 3d 530, 558 (S.D. Cal. 2019) ("In determining the preclusive effect of a prior state court judgment, federal courts are required to apply the preclusion law of the state in which the judgment was rendered[.]"). "Claim preclusion does not require actual litigation of an issue of fact or law, only that the opportunity to litigate was present." *Mahaffey*, 2019 WL 7858402 at *8. The "opportunity to litigate" is a broad term that applies "with respect to all or any part of the transaction or series of connected transactions, from which the action arose." *Id.*

Plaintiffs allege here that the imposition of these conditions was discriminatory, but all of the relevant facts were true at the time plaintiffs and DEQ were engaged in a pending state lawsuit initiated by DEQ in 2019. In the state court case, DEQ alleged that plaintiffs had violated environmental rules and regulations in failing to clean up its facility following the fire and for operating their shredder without an ACD Permit.[10] That case was dismissed pursuant to a stipulated judgment in August of 2021, approximately five months after DEQ had issued the 2021 ACD Permit with the "new source" limitations.[11] Plaintiffs thus already had the opportunity to litigate issues related to the ACD Permit for plaintiffs' new shredder and the conditions that DEQ imposed, and are precluded now from raising them in this case. *See Mahaffey*, 2019 WL 7858402 at *7.

### B.    Due Process

Plaintiffs' claim for "procedural due process," *see* Compl. ¶ 33-38, ECF 1-1, is difficult to parse. The complaint asserts that plaintiffs "ha[ve] a right to operate its business without improper enforcement of state policies by racially motivated state agents," and generally alleges

---

[10] *See* Smith Decl., Ex. 5 ¶¶ 29–48, ECF 53-5 (state court complaint).
[11] *Id.*, Ex. 7 at 3–4, ECF 53-7.

that "[d]efendants violated [p]laintiffs' right to due process as indicated in the facts" alleged in the complaint. Compl. ¶ 35, ECF 1-1. As previously mentioned, the claim essentially targets two DEQ actions: requiring plaintiffs to obtain a new ACD Permit instead of relying on the "Notice of Intent to Construct," and imposing "new source" restrictions on the 2021 ACD Permit for the shredder at NW Metals' new location. Any claim based on the "Notice of Intent to Construct" issue is time-barred by the same two-year statute of limitations described above. It is undisputed that DEQ informed plaintiffs in August of 2018 that the "Notice of Intent to Construct" was no longer effective to authorize plaintiffs to operate their shredder. Plaintiffs may disagree with that decision, but the statute of limitations for any claim based on the "Notice of Intent to Construct" issue expired in August of 2020, long before plaintiffs brought this suit.

Furthermore, in an administrative enforcement proceeding initiated in 2018, plaintiffs already had the chance to litigate the question whether they could operate the shredder under the "Notice of Intent to Construct" or whether DEQ could require them to apply for a new ACD Permit.[12] In August of 2019, the ALJ determined that plaintiffs violated DEQ rules by operating the shredder without a permit, and the Environmental Quality Commission adopted the ALJ's decision on May 19, 2020.[13] Plaintiffs appealed that decision to the Oregon Court of Appeals, which affirmed the Commission's decision without opinion in 2022. *See NW Metals, Inc. v. Dep't of Env't Quality*, 317 Or. App. 137 (2022).[14] In short, plaintiffs had the opportunity to raise and argue the legal effect of the "Notice of Intent to Construct" and DEQ's determination

---

[12] *See* Smith Decl., Ex. 3 at 1, ECF 53-3.
[13] *See id.* at 31–34 (Proposed and Final Order from administrative law judge discussing Type II approval and ACD permit requirement); *id.*, Ex. 4 at 1, ECF 53-4.
[14] *See also* Smith Decl. ¶¶ 4–6, ECF 53 (describing procedural history of administrative enforcement action).

that a new ACD Permit was required, and they are precluded from now attempting to re-litigate that issue. *See Mahaffey*, 2019 WL 7858402 at *7.

The same is true for the 2021 ACD Permit containing the "new source" restrictions. As explained above regarding plaintiffs' discrimination claims, DEQ issued the ACD Permit with restrictions in March of 2021 while the state court lawsuit between plaintiffs and DEQ was pending. Plaintiffs had the opportunity then to litigate issues related to the 2021 ACD Permit for plaintiffs' new location and the "new source" conditions that DEQ imposed, and they are now precluded from raising those issues in this case. *See Mahaffey*, 2019 WL 7858402 at *7.

Moreover, even assuming arguendo that these claims are timely or otherwise not precluded, they would still fail. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a prima facie substantive or procedural due process claim, one must, as a threshold matter, identify a liberty or property interest protected by the Constitution." *United States v. Guillen-Cervantes*, 748 F.3d 870, 872–73 (9th Cir. 2014). "The Constitution itself creates no property interests; rather, such interests 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.' " *Id.* (quoting *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756 (2005). "A constitutionally cognizable property interest in a benefit requires more than an abstract need or desire or a unilateral expectation of it—rather, there must be a legitimate claim of entitlement." *Id.* (simplified). "This typically requires an individual to demonstrate that an existing law, rule, or understanding makes the conferral of a benefit mandatory." *Id.* (simplified); *see also Castle Rock*, 545 U.S. at 756 ("Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.").

Plaintiffs have not shown a "legitimate claim to entitlement" to any particular ACD Permit, with or without conditions. *Shanks v. Dressel*, 540 F.3d 1082, 1091 (9th Cir. 2008). At a very high level, the applicable administrative rules create six different kinds of ACD Permits, and each one varies in complexity. *See* O.A.R. 340-216-0025(1)–(6). The rules specifically state that DEQ has the discretion to "determine . . . that the owner or operator of a source is ineligible for certain types of ACDP and must be issued a different type of ACDP" based on a host of specific factors, including "the nature, extent, toxicity and impact on human health and the environment of the source's emissions" and the "compliance history of the source[.]" O.A.R. 340-216-0025(7). This is not the type of regulation that mandates a particular result; rather, DEQ has substantial discretion to evaluate ACD Permit applications and plaintiffs have not identified any statutory or regulatory language that restrains DEQ's discretion in a specific and "carefully prescribed" way such that plaintiffs had a constitutional right to obtain an ACD Permit without conditions. *See Shanks*, 540 F.3d at 1091 (finding due process claim was not viable because plaintiff did not identify "any statutory language that imposes particularized standards that significantly constrain [the City of Spokane's] discretion to issue the [building] permits in question and would create a protected property interest in the permits' denial").

### C.    Intentional Infliction of Emotional Distress

Defendants are also entitled to summary judgment on plaintiffs' IIED claim. "To prevail on a claim for IIED, a plaintiff must show (1) that the defendant intended to cause the plaintiff severe emotional distress or knew with substantial certainty that its conduct would cause such distress; (2) that the defendant's conduct in fact caused the plaintiff severe emotional distress; and (3) that the defendant engaged in outrageous conduct, that is, conduct extraordinarily beyond

the bounds of socially tolerable behavior." *Schoen v. Freightliner LLC*, 224 Or. App. 613, 622, 199 P.3d 332, 339 (2008) (citation omitted).

Even assuming that plaintiffs' IIED claim is not time-barred by the two-year statute of limitations, *see* O.R.S. 30.275(9), or that plaintiffs are not precluded from raising this claim in a new law suit where they had the opportunity to do so in a prior administrative proceeding and state court law suit, neither plaintiffs' own motion for summary judgment nor plaintiffs' response to defendants' motion for summary judgment identifies any evidence specific to any of the elements of an IIED claim. *See* Pl. Memo. Summ. J. 7–32, ECF 39; Pl. Resp. Mot. Summ. J. 8–9, ECF 61. By and large, plaintiffs seem to be asserting that DEQ's enforcement actions—whether requiring plaintiffs to obtain an ACD Permit, not allowing plaintiffs to operate the shredder under the "Notice of Intent to Construct" approval, or issuing the 2021 ACD Permit with "new source" conditions—were discriminatory and thus were "outrageous" on their face. *See* Pl. Memo. Summ. J. 12, ECF 39 (asserting that defendants' "action to shut down NW Metals['] shredder" was "intentional, outrageous, and outside the bounds of socially tolerable conduct"). Plaintiffs do not point to any specific evidence, apart from their own suspicions, that any DEQ official harbored any intent to cause plaintiffs harm. *Justice v. Rockwell Collins, Inc.*, 117 F. Supp. 3d 1119, 1134 (D. Or. 2015), *aff'd*, 720 F. App'x 365 (9th Cir. 2017) (ruling that IIED claim was subject to summary judgment because the plaintiff did not produce any evidence of intent: "conclusory allegations, unsupported by facts, are insufficient to survive a motion for summary judgment") (quoting *Hernandez v. Spacelabs Med. Inc.,* 343 F.3d 1107, 1116 (9th Cir. 2003).

Further, none of actions described in plaintiff's complaint or briefing meet the high bar for establishing the third element of an IIED claim under Oregon law. "IIED is not available

where the actions complained of are merely rude, boorish, tyrannical, churlish, or mean." *Upchurch*, 2021 WL 6066283 at *4 (simplified). "The tort does not provide recovery for the kind of temporary annoyance or injured feelings that can result from friction and rudeness among people in day-to-day life." *Id.* (quoting *Hetfeld v. Bostwick*, 136 Or. App. 305, 308 (1995)). The conduct must be "outrageous in the extreme." *Id.*; *see also* Restatement (Second) of Torts § 46, comment d ("Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."). DEQ's regulatory actions against plaintiffs—be it insisting that plaintiffs comply with environmental regulations in cleaning up their premises after the fire, requiring plaintiffs to obtain a particular type of ACD Permit, or issuing plaintiffs an ACD Permit with "new source" restrictions—were well within the bounds of social norms, considering the negative environmental and community impacts of the fire at plaintiffs' premises reflected in the record and the importance of the public health aspects of air quality regulation. *See Clemente v. State*, 227 Or. App. 434, 443 (2009) (providing examples of outrageous conduct including threats of physical or sexual violence, repeated use of highly offensive derogatory slurs in the workplace, or exposing the plaintiff to physical harm or illegal conduct).

   **D.    Spoliation and Other Evidentiary Issues**

   Finally, plaintiffs have identified several alleged evidentiary issues that they assert entitle them to judgment against defendants as a matter of law. *See* Pl. Memo. Mot. Summ. J. 14–25, ECF 37-1. For one, plaintiffs assert that DEQ did not produce or could not locate certain documents related to NW Metals in their files. *Id.* at 14–17. According to defendants, the disputed "missing" documents largely consist of paper records that defendants posit were likely

lost during an agency move, and that there were no problems with the electronically stored information that was exchanged in the discovery process. Def. Resp. Pl. Mot. Summ. J. 7, ECF 50. Plaintiffs also assert that various individual defendants "committed perjury in the course of this action." *See* Pl. Memo. Summ. J. 24–25, ECF 39. Largely, the alleged "perjury" that plaintiffs have identified is based on plaintiffs' belief that the DEQ employees wrongly interpreted the legal significance of the "Notice of Intent to Construct" approval or were wrong in insisting that plaintiffs could not operate a new shredder without an ACD Permit. *See id.*

None of the analysis of plaintiffs' claims above is changed by the purported evidentiary issues that plaintiffs have identified. For one thing, plaintiffs have not explained how any of the allegedly missing documents would impact the analysis of when plaintiffs' claims accrued; as explained above, an email from plaintiff Anotta shows plaintiffs believed that DEQ's allegedly discriminatory actions began at least as far back as March of 2020, and DEQ first informed plaintiffs' that they needed to apply for a new ACD Permit in August of 2018. Nor have plaintiffs explained how any allegedly missing documents or the allegedly perjured statements would change the conclusion that plaintiffs already had the opportunity to raise their current claims in either the administrative proceeding or in the state court case regarding DEQ's cleanup orders and permitting decisions. Plaintiffs do not explain how any of the alleged missing documents would establish that they have a constitutional right to obtain an ACD Permit. And plaintiffs have not explained, other than by speculating that the missing documents would "likely . . . sho[w] severe outrageous conduct by defendants," Pl. Resp. Mot. Summ. J. 9, ECF 60, how the missing documents could transform DEQ's actions here—requiring plaintiffs to clean up their property after the fire and to obtain an ACD Permit to operate a new shredder—into the type of outrageous conduct that could support an IIED claim.

Even if the missing documents were relevant to the analysis of plaintiffs' claims, spoliation sanctions would not be appropriate. Defendants assert, and plaintiffs do not contest otherwise, that there were no apparent issues with electronically stored information and thus whether there are truly any "missing" documents from the record seems unlikely. *See* Def. Resp. Pl. Mot. Summ. J. 7, ECF 50; Pl. Reply 11–12, ECF 60. Moreover, plaintiffs have not advanced any argument or provided any evidence that defendants lost or destroyed the record "with a culpable state of mind," and thus spoliation sanctions would not be justified. *Justice*, 117 F. Supp. 3d at 1130–31 (explaining that courts will impose spoliation sanctions when (1) "the party having control over the evidence had an obligation to preserve it at the time it was destroyed"; (2) "the records were destroyed with a culpable state of mind"; and (3) "the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense").

Finally, the basis of plaintiffs' allegations of "perjury" is essentially a disagreement over the legal effect of plaintiffs' "Notice of Intent to Construct" and whether that document should have authorized plaintiffs to operate their new shredder without obtaining an ACD Permit. *See* Pl. Memo. Summ. J. 24, ECF 39 (asserting that DEQ employee David Graiver "denied a Type II intent to construct is a permit" and that Graiver "knew that it was a permit but tried to distort the fact"). Plaintiffs may firmly believe that their read of the DEQ regulations regarding whether their "Notice of Intent to Construct" was indeed a "permit" is correct, but such a disagreement with DEQ's interpretation of the rule is not perjury; it is a question of law that can be resolved by some kind of administrative adjudication or court case. Thus, even if plaintiffs' interpretation of the DEQ rule was later found to be correct in an administrative or court proceeding, it would not be sanctionable conduct for DEQ to have taken a contrary legal position. *See Oxxford Clothes*

*XX, Inc. v. Expeditors Int'l of Washington, Inc.*, 127 F.3d 574, 578 (7th Cir. 1997) ("An erroneous legal contention, being out in the open as it were, does not have obstructive capability, and is not fraud merely because if believed it would confer an advantage on the party making it. If that were the standard for fraud on the court, no civil judgments would be final; every legal error that a judge committed that had been invited by the winning litigant would be, prima facie, fraud on the court.").

## ORDER

Defendants' Motion for Summary Judgment (ECF 54) is granted and plaintiffs' Motion for Summary Judgment (ECF 37) is denied as moot. This case is dismissed and judgment will be entered in defendants' favor.

IT IS SO ORDERED.

DATED March 18, 2025.

_____
/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

16 – OPINION AND ORDER